Chancellor Jqhnston.
The case is, that the plaintiff, having in his office an execution against one Corley, levied it on a female slave, which he proceeded to sell. While the plaintiff was engaged in the sale, Corley was employed in grossly misrepresenting the qualities of the slave to the defendant, who thereupon bid the sum of 32G dollars, (a sum not equal to the execution,) at which bid she was knocked off to him. There was no proof that the plaintiff knew of any defects in the slave, or assented to Corley’s misrepresentations.
The defendant did not pay. down the price, but was, nevertheless, permitted to take possession of the negro; which he carried home. On his way, he said to one travelling with him “here is a negro 1 have been buy: ing to-day.”
Discovering, that night, that the negro was unsound, he brought her back thg next day and offered her to the plaintiff, telling him he would not keep her; that if he had to pay for her, he vyould rather do it withoujt her than with her; and requesting him to take her and make his money put of her. The plaintiff replied, if he re-sold, it must be at the defendant’s risk : whereupqn the negro being delivered to him, he re-sold her at the defendant’s risk. At the second sale she brought but an inconsiderable part of the sum at which the defendant had bought.
The defendant refusing to pay up the difference between the first and ^econd sale, the plaintiff brought this action, in which he counts separate *179 ly, for the price bid at the first sale, and for the difference between the first and second.
The jury found for the plaintiff the price bid by the defendant, deducting the proceeds of the second sale.
The questions before us are :
1st. Whether the first sale was completed, and if so, whether it was not rescinded by the plaintiff.
2d. Whether the action should not have beeti in the name of Corley # the defendant in the execution.
3d. Whether the misrepresentations of Corley did not vitiaite the Sheriff’s sale to the defendant.
The two -first questions seem free from difficulty. The slave was actually put into the defendant’s possession, after he bid her off, and he declared, as he carried her home, he had bought her. As no money was paid, it may be that the Sheriff might have insisted that the delivery was conditional; but surely the purc7taser was not at liberty to take any such ground. In a delivery .upon condition of after payment, the condition is plainly for the benefit of the vendor only. To permit the vendee to take advantage of his'own non-performance of the condition, would be no better than to allow it as a good argument for him, that he is not bound for the price because he has not paid it.
The fact of delivery has been found by the jury, That completed the contract of sale, and bound the defendant as ai purchaser.
If the Sheriff re-accepted the slave, as a recision of the contract, clearly he has no cause of action. But it appears he refused to take back the property, but upon terms. The terms were that he should re-sell at the defendant’s risk. This was no recision, but on the contrary, an affirmation, of the first contract of sale.
Where a Sheriff sells, but, on account of the purchaser’s failure to pay the price, does not deliver the property, he may, under the Act of the Legislature, re-sell at the purchaser’s risk. Here he makes the re-sale as Sheriff, notwithstanding the first sale is not rescinded.’ But this is so, merely by virtue of the statutory provision.
But the Act does not apply to a case where th'e Sheriff delivers the property. The delivery vests the property in the purchaser, and if the purchaser re-delivers to be resold, (the Sheriff not consenting to rescind,) the Sheriff does not make the second sale- in bis official character, or by virtue of any power which it confers, buras the agent of the first purchaser, and by virtue of the authority he has conferred. The Sheriff may still ibsist on’ the original sale :’ the only consequence of the second’safe i's’ that *180 the Sheriff must give credit on the first for the amount raised by the second.
The second question seems to have received the proper answer from the circuit judge. When an auctioneer sells, it has been determined that an action for the purchase money may be maintained either by the auctioneer or his principal. If Corley was entitled to the whole of the purchase money, so that the Sheriff sold as his agent only, the action might have been brought either by the Sheriff or Corley : and in that case it may be conceded that the same defence might be made to the Sheriff’s action as to Corley’s. But it appears that the defendant’s bid fell short of the execution under which the sale was made : so that no part of the price was receivable by Corley. Having no right to the money, it would be, a palpable absurdity that he should have a right" to sue for and recover it.
The third question was the only one seriously argued here. The question is, whether the misrepresentations of a debtor, whose property is sold by a Sheriff, will vitiate the Sheriff’s sale for fraud.
The sale in question was made by the Sheriff, not by Corley: It is not denied that the rule at Sheriff’s sale is, caveat emptor. What is the effect of that rule, if it is not that the purchaser must take notice that the Sheriff warrants nothing, and that the purchaser must, therefore, enquire for himself? The Sheriff did not direct the defendant to enquire of Corley. When he did so, the enquiry was his own, not the Sheriff’s — for his own benefit, not the Sheriff’s. As between the Sheriff and himself, it was at his peril upon what information he acted ; and if he chose to depend on the statement of one not authorized to make any, he must abide the consequences. His mistake is certainly no ground to deprive the execution creditor of his money.
The proposition is certainly true, that fraud will vitiate any contract. But then, it is very material always to enquire who are the parties to the contract, and who perpetrated the fraud. If the perpetrator of the fraud was no party to the contract, but a third person, without authority to treat for the parties, they are not responsible for his fraud.
The immediate parties to the sale in question, were the Sheriff and the defendant. But it is said the Sheriff made the sale as agent for the parties to the execution, and that his contract may be avoided for the fraud of his principals.
For myself, I would admit that the Sheriff was the agent of the parties to the execution. Upon which principle, a Sheriff’s memorandum is considered as a memorandum of the parties, and takes a sale out of the statute. But then,, it must be considered that this is an agency created by *181 law, and not a voluntary agency ; and that it is an agency for personshaving several and opposing, not joint, interests.
The agent is constituted by both,parties to the execution; the law declares the rule by which he is to proceed; and neither of the constituents, their interests and rights being opposite, can, without the concurrence of the other, vary the agent’s powers, or control the terms of his contracts as fixed by law. It is not like the case of co-partner principals, where each has an entire dominion over the subject matter of the agency.
It may be that if both parties to an execution combine in wilfully misrepresenting property to be sold by their agent, the ¡sheriff, the sale will not be enforced, although made under proclamation, caveat, emptor; for undoubtedly, no form of contract will authorize fraud.
The supposition that Corley’s misrepresentations can be set up against the Sheriff’s sale, proceeds on the notion that there was but one contract ; which appears to me a mistaken view. I think there were two contracts. Surely there may be two contracts built on the same, transaction. May not a debtor or creditor, say to a by-stander at a Sheriff’s sale, “If you will bid for this property, although the Sheriff will not warrant either its soundness or its title, I will warrant both;” and if he bids on this, has he no right to hold the person making the proposition to his contract to indemnify % Here is a contract in addition to that of the Sheriff. Both contracts are good, although both relating to the same auction, but each differs from the other in its terms.
In the present case, 1 think there were two Contracts. One made with the Sheriff, in purchasing from him Under the terms caveat emptor. The other with Corley, in which the purchaser placed reliance on his representations. These contracts should be kept separate. The Sheriff should have the benefit of the one made by himself, without reference to any other terms than those upon which he made it. As to the other, the purchaser’s recourse should be upon Corley, whom he trusted, and who deceived him.
This view, if correct, frees- the case from the operation of the maxim that no one shall be permitted to take a benefit under a contract infected with fraud, although the fraud be that of a third person. The Sheriff does not claim under the contract made by Corley, which is infected; but under the one made by himself, which is free from all just imputations.
If the misrepresentations of debtors are to vitiate Sheriff’s sales of their property, I would ask, what Sheriff can ever make an effectual sale, if the debtor be disposed to frustrate him 1 The debtor has only to make some exaggerated representation, upon which the purchaser, (who may *182 be his friend,) may found a defence. And this operation may be repeated* iotie.s quoties, at every succeeding sale. What creditor can ever collect his money upon these terms ?
The case of Herbemont v. Sharp, quoted at bar, might, at first view* seem to support the defence setup here. That case is very questionable. But to give it its utmost operation, it differs from this in two particulars, and the more important one is, that the sale, in that case, was of land, for which no title was executed to the purchaser. In this case the sale was of personalty, which was delivered — which delivery, of itself, transferred the title to the purchaser. There the contract was executory — > here it was executed. My -opinion on the whole is, that the motion should be refused.
Evans, Johnson, Gantt, Butler, C. and JJ. concurred. O’Neall, J. absent at the argument. DeSaussure and Harper, CC. dissented.
Richardson, J.
The facts of the case are placed beyond dispute j Corley, the owner of the negro .sold by the sheriff, committed a fraud upon Turner, the purchaser. And the principle of law is equally clear; that the fraud would have destroyed the contract of sale if it had been made by Corley himself. But inasmuch as the negro was sold by the sheriff, under an execution against Corley, it is urged that the fraud of Corley cannot vitiate the sale by the sheriff; because, in sheriff’s sales; there is no irrfplied warranty, either of title to the thing sold, or its soundness. In such cases, “ caveat-emptor” is the law maxim. The purchaser must take care of himself, (Thayer & Sturgis v. Sheriff of- 2 Bay; 169. Moore v. Aiken, 2 Hill, 403)
But does this rule apply to cases of fraud committed in the contract of sale 1 The answer is plain ; fraud may vitiate any contract.
It is rejoined, that Corley, not the sheiiff, committed the fraud; and the sale by the officer who sells under a compulsory process of law, is not to be destroyed by any other fraud than his own.
Upon this rejoinder the decision of the court must turn. We have therefore to enquire Into the extent of thé rule of “caveat emptor’’ Does it Exclude an implied warranty against frauds in sheriff’s sales ?
The same rule applies to all sales; if there is no warranty of title or of soundness in the goods sold. But that rule which is so general in the common law, does not assist a fraud, nor render it inoperative in any case.
That fraud vitiates contracts is a universal principle of jurisprudence r because, against fraud; covin and deceit, men cannot be guarded by any *183 rules of law, or habits of caution. In the case before us, if the sheriff had conspired with Corley, the fraud must have invalidated the sale : “ caveat emptor” could not have made it binding upon Turner.
The true question then, presents itself — is the fraud of Corley as effectual in destroying the sale, as if the sheriff had joined in the fraud ?
But, the law is clear, that a fraud by the owner or his agent, is the same thing in íaw — either vitiates contracts, (4 Term R. 66 : Doe v. Mar, Harr. 161.)
Let us suppose that there had been a balance of money, after paying the execution of Corley, and that he had brought suit in his own name for such balance; must he not have been estopped by his own fraud ? He could not take advantage of his own wrongful act,
The only difficulty, if any, is then to prove this postulate, Is the sheriff the agent of the defendant as well as of the plaintiff, in .compulsory sales, made by the sheriff under executions of ji. fa ? If he is such an agent, the fraud of Corley destroys the sale of the negro, and Turner must gain his case. In principle or reason, it would be enough to say, that the fraud of Corley was for selfish ends ; he gained money by the deceit.
But, all salesmen — as factors, auctioneers, clerks, &c., have been adjud7 ged the agents of their principals — and their fraudulent acts, and those of their owners, equally vitiate contracts of sale ; (Harr. 165; Doc. & Stu. c. 45.) and why not sheriffs? I ask. That they are the agents of both parties, is, indeed, scarcely brought into discussion : and the only reply is, that the doctrine of “caveat emptor” applies to sheriff’s sales.
But, permit me to repeat, that the same rule may apply to any sale, by such terms of sale being made known. The most express condition of “caveat emptor”.being the condition of a sale, would not cure a fraud in either party. At common law, “ caveat emptor” is the general rule, in the sales of chattels — and excludes the implied warranty of soundness. And yet, if there be any fraud or deceit, the purchaser may avoid the contract; fraud still vitiates it.
It is supposed that it would be inconvenient and bad policy, to allow any act of the owner to invalidate the sheriff’s sales. But, would it not be much worse to suffer him to practice frauds under the letter of a rule, which is for his benefit — and thus pervert the object of the rule itself?
Let us illustrate the universal effect of fraud, by a very opposite class of cases.
At common law, by buying goods in. “ market overte,” the purchaser obtains title against the owner, although the vendor had no right to sell. In such cases, the owner, not the purchaser, mus(t take care, at his peril^ *184 that his chattels shall not be sold in open market by any person. But sales, by fraud or covin in the purchaser, constitute the exception to this general rule of convenience and policy. (See 2 Instit. p. 703. Doc. & Stu. c. 47.) Both rules are good in the proper place, are consistent with each other : but both are intended to prevent frauds ; and neither must be so applied as to defeat its own object.
Another part of the argument is, that the contract was completed by Turner’s taking possession — and therefore he cannot set up such a defence.
True, the sale was completed. By the decision in the case of Moore v. Aiken, 2 Hill, 403, the sale was completed, even without possession or titles tendered, and the purchase money demandable by the sheriff in virtue of the public sales, and his entry of it, even for lands.
But in a question of fraud, this can make no difference : fraud vitiates all contracts, not merely inchoate contracts. Adopt and confirm a contract as you will, yet a fraud, when discovered, may destroy it. Legal solemnities make no difference, but to render satisfactory proof of the fraud more difficult: but being once proven, it arrests the contract at any stage, and ipso facto nullifies it.
But, beyond all reasoning, where the policy of two rules or opinions is set in opposition, adjudged cases should point out the proper decision; “ stare decisis” affords the convenient and safe rule for our guidance : and we should not change the established principle, nor accommodate it to the exigency of a questionable policy.
Let us now, then, look to adjudged cases, for the effect of frauds in sheriff’s sales, although committed by the party whose property has been sold under the compulsory process of a fi. fa.
In the case of Herbemont v. Sharp, 2 M’C. 264, decided by the unanimous opinion of the Constitutional Court of Appeals, we have, in every principle, the precise case now before us. Sharp’s land was sold by the sheriff under a fi-fa. Herbemont bid it off, but refused to take titles or pay the purchase money, upon two grounds. 1st. That he had not received titles. 2nd. That Sharp’s title was defective, and he had fraudulently directed the sale of lands not his own.
Upon these facts, Herbemont refused to enter satisfaction on the judgment : (he was the plaintiff on the execution :) and the whole court supported the defence, and dismissed the rule against him — which, let it be remarked, had been made absolute, by the judge in the circuit court.
Now, 1 ask, where is the distinction between that case and the one now before us 1 ■ .
In the former, the defective title of Sharp constituted the objection *185 hiade by Herbemont — which is altogether nugatory ; the rule of “ caveat ’emptor” forbids such a defence. But, the sale was knowingly hnd fraudulently directed by Sharp í and the fráud constitiite'd. the’ true defence, precisely as in Turner’s casé: But how much stronger is thfe frand set Up by Turner!
Wardlaw Wardlaw, for appellant; Bauskett, contra;
Itrday be said Herbemont’s case was merely upon a rule to show cause: but the rulé had been made absolute, and the question was the same as in the presént casé. Snail payment be made upon the bid of the purchaser 1 And the court decided, that it could not be enforced upon strict legal principles.
It may be said, the argument of the court turned upon the ground, that the sale had not been completed by the titles of the sheriff; but titles liad been rejected by Herbemont as well as Turner--and both refused payment, on the ground of fraud by the defendant.
As to thé momentary possession of Turner, before he discovered thé fraud, and which, until the money was paid, was the possession of the sheriff, it can maké no difference in a question of fraud.
If we wanted a decision that the contract of sale Was complete and final, without sheriff’s titles, .we have it expressly so adjudicated in the case off Moore v. Aiken, 2 Hill, 403; and in the same case, that á defective title constitutes no Valid objection against sheriff’s’ sales : which last position illustrates satisfactorily, what I have before said, that the decisiorl in Herbemont’s case stands upon the single ground of fraud, eommittéd too by the defendant, owner of the' property sold by the sheriff; Which is the ground of Turner’s defence.
Herbemont’s case and Turner’s are, then, identical: In the former, the rule had been made absolute by the circuit judge, and it could not therefore have been set asidé, unless upon essential principles of law. But it was done, and the same principles equally support the claims of ’Turner for a new trial.’